UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREGORY VICTORIN,<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>JONES LANG LASALLE, DOMINICK SANTIAGO, JOHN DOES 1–10, and XYZ CORPORTATION,<br><br>    **Defendants.** | Civ. No. 20-18123 (KM) (ESK)<br><br>**OPINION** |

KEVIN MCNULTY, U.S.D.J.:

Gregory Victorin sued his employer, Jones Lang LaSalle, Inc. ("JLL"), and former supervisor, Dominick Santiago, in New Jersey Superior Court, asserting state-law employment discrimination claims. JLL removed the case to this Court, and Victorin moves to remand. (DE 8.)[1] For the reasons that follow, the motion is **GRANTED**.

## I.    BACKGROUND

Victorin, a New Jersey resident who describes himself as "Haitian-American/Black," began as a mailroom clerk at JLL, a real estate development firm, in 2017. (Compl. ¶¶ 1, 3, 31.) He was promoted to facilities coordinator in a department which Dominick Santiago oversaw. (*Id.* ¶¶ 39–40.) Then, allegedly, began a series of discriminatory and harassing actions by Santiago towards Victorin on the basis of Victorin's race, ethnicity, religion, and

---

[1]    Certain citations to the record are abbreviated as follows:

DE = docket entry

Compl. = Victorin's Complaint filed in New Jersey Superior Court (DE 1)

Notice = JLL's Notice of Removal (DE 1)

Opp. = JLL's Opposition to Victorin's Motion to Remand (DE 10)

disability. (*E.g., id.* ¶¶ 77, 93.) Victorin tried at various times to report these actions and faced further actions from Santiago as a result. (*E.g., id.* ¶ 134.)

Eventually, around August or September 2018, Santiago was relocated to a site different from Victorin. (*Id.* ¶ 152; DE 10-1 ¶¶ 5–6.) Victorin does not allege any interaction with Santiago since that time. At most, Victorin alleges that he suffered a workplace injury in April 2018, inquired about worker's compensation in February 2019, and was informed that Santiago had told the office to close Victorin's file and deny him compensation. (Compl. ¶¶ 181, 189.) Nonetheless, Victorin alleges that he still feels the effects of Santiago's prior actions, such as being stuck in a low-paying position as a result of Santiago's refusal to promote him. (*Id.* ¶¶ 155–56.)

In September 2020, Victorin sued JLL and Santiago in New Jersey Superior Court. He asserted nine claims that can be grouped into three categories: (a) claims under the New Jersey Law Against Discrimination, ("NJLAD") N.J. Stat. Ann. §§ 10:5-1 *et seq.*, for discrimination on the basis of race, disability, perceived disability, national origin, and religion (Compl., Counts 1, 3, 4, 5, 6); (b) a claim under the Diane B. Allen Equal Pay Act, 2018 N.J. Sess. Law Serv. ch.9 (West), *codified in relevant part at* N.J. Stat. Ann. § 10:5-12 (Compl., Count 2); and (c) retaliation claims under NJLAD and New Jersey common law for filing a worker's compensation claim, filing complaints of workplace discrimination, and complaining of wage disparity (Compl., Counts 7, 8, 9).

JLL removed the case to this Court, relying on diversity jurisdiction. (Notice ¶ 9.) In support, JLL states that it is diverse from Victorin, as it is incorporated in Maryland and has its principal place of business in Illinois. (*Id.* ¶ 11.) JLL acknowledges that co-defendant Santiago is not diverse from Victorin, but JLL argues that any claims against Santiago are time-barred, and that he was not served. (*Id.* ¶¶ 3, 12.) Victorin moves to remand.

2

## II.   DISCUSSION

Defendants may remove cases brought in state court on the basis of federal diversity jurisdiction, *i.e.*, where the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1441(a), 1332(a). But a removed action must be remanded when, on further inquiry, the court lacks subject matter jurisdiction. *Id.* § 1447(c). So, on this motion to remand, I must determine whether the action indeed qualifies for diversity jurisdiction.[2]

Diversity jurisdiction requires "complete diversity between the parties, that is, every plaintiff must be of diverse state citizenship from every defendant." *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006). JLL is a citizen of Maryland and Illinois because its state of incorporation and principal place of business are there. 28 U.S.C. § 1332(c)(1) (a corporation is a citizen of states where it is incorporated or has "its principal place of business"). Victorin is a New Jersey citizen. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). The other defendant, Santiago, is a New Jersey citizen and thus non-diverse from Victorin.

JLL, however, urges the court to disregard the New Jersey citizenship of Santiago under the doctrine of fraudulent joinder. That doctrine allows a court to disregard and dismiss a non-diverse defendant and retain jurisdiction if "there is no reasonable basis in fact or colorable ground supporting the claim" against that defendant. *Briscoe*, 448 F.3d at 216 (citation omitted). The removing party "carries a heavy burden" in invoking fraudulent joinder. *Id.* at 217 (citation omitted). JLL must show that there is no possibility that a state

---

[2]    The parties do not dispute that the amount in controversy requirement is met. Indeed, similar claims have seen recoveries more than $75,000. *Klawitter v. City of Trenton*, 928 A.2d 900, 919–20 (N.J. Super. Ct. App. Div. 2007); (affirming emotional distress award of $79,538 for reverse race discrimination based on plaintiff's testimony that not being promoted left her "crushed"); *Kluczyk v. Tropicana Prods., Inc.*, 847 A.2d 23, 25–26 (N.J. Super. Ct. App. Div. 2004) (affirming damages award in full, including $20,000 for emotional distress, $225,000 for punitive damages, and $315,547.45 in counsel fees in retaliatory discharge case).

court could entertain the claims against Santiago. *Id.* So long as there are colorable arguments for a claim against a non-diverse defendant, even if I would not find them meritorious on a motion to dismiss, the non-diverse defendant will not be regarded as fraudulently joined. *Id.* at 218. The plaintiff need only show that it has one colorable claim against a non-diverse defendant, even if other claims against that defendant are barred. *E.g.*, *Green v. Amerada Hess Corp.*, 707 F.2d 201, 207 (5th Cir. 1983); *Montano v. Allstate Indemnity*, No. 99-2225, 2000 WL 525592, at *2 (10th Cir. Apr. 14, 2000); *Chin v. CH2M Hill Cos.*, No. 12 Civ. 4010, 2012 WL 4473293, at *6 (S.D.N.Y. Sept. 28, 2012); *see Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) ("[I]f there is even a possibility that a state court would find that the complaint states *a cause* of action against any one of the resident defendants, the federal court must . . . remand the case to state court. (emphasis added) (citation omitted)).

JLL argues that Santiago is fraudulently joined because (1) claims against him are time-barred, and (2) he has not been served. I address each argument in turn and find that neither is persuasive.

### A. Statute of Limitations

JLL primarily argues that Victorin's claims against Santiago are all time-barred. "[A] statute of limitations defense is properly considered in connection with a fraudulent joinder inquiry." *Brown v. Jevic*, 575 F.3d 322, 327 (3d Cir. 2009). This is so because a time-bar precludes or extinguishes a claim against a defendant. *Briscoe*, 448 F.3d at 219. I take up the retaliation claims first, and then the Equal Pay Act claim.

### 1. Retaliation Claims

The retaliation claims based on the NJLAD and common law have a two-year statute of limitations. *Alexander v. Seton Hall Univ.*, 8 A.3d 198, 202 (N.J. 2010) (NJLAD); *see Montells v. Haynes*, 627 A.2d 654, 657–60 (N.J. 1993) (employment discrimination actions in general are personal injury torts that have a two-year limitations period). Generally, the period begins to run from

the day "[a] discrete retaliatory or discriminatory act occurs." *Alexander*, 8 A.3d at 203 (citation omitted). While Victorin alleges several discrete acts by Santiago, they all but ceased in August 2018, when Santiago was transferred.[3] Victorin filed his Complaint in September 2020, so claims arising from even the latest of those acts would be time-barred.

The only later act implicating Santiago was the denial of workers compensation in February 2019. Here, Victorin stands on better footing. Victorin was injured in April 2018, but when he sought to collect workers compensation in February 2019, he learned that Santiago had instructed the claims adjuster to deny the claim. Although there is no indication *when* Santiago contacted the claims adjuster, Victorin learned of Santiago's actions in February 2019—less than two years before he filed his Complaint.

There is at least a colorable argument that a retaliation claim accrued in February 2019 under the discovery rule.[4] That rule provides that when a plaintiff is reasonably unaware of a discriminatory act when it occurs but learns of it later, the limitations period runs from when he discovered the act. *Roa v. Roa*, 985 A.2d 1225, 1234 (N.J. 2010). In *Roa*, a plaintiff alleged that his employer fired him in October 2003 in retaliation for complaining about harassment. *Id.* at 1229. In November 2003, he learned from his health insurer that his employer-sponsored insurance was cancelled. *Id.* When he sued in

---

[3]     The Complaint alleges that Santiago was transferred in September 2018, but JLL submits a declaration from a JLL employee asserting that Santiago was transferred in August 2018. (*Compare* Compl. ¶ 152, *with* DE 10-1 ¶¶ 5–6.) A district court may undertake "a limited consideration of reliable evidence that the defendant may proffer" in support of a statute of limitations argument when claiming fraudulent joinder. *Briscoe*, 448 F.3d at 220. Victorin has not disputed the declaration or date of Santiago's transfer, so I will assume that Santiago was indeed transferred in August 2018.

[4]     Victorin's motion does not invoke the discovery rule by name, nor does JLL address the rule. Nonetheless, I may (or rather, must) raise the issue myself because I have a duty to determine whether I have a subject matter jurisdiction over this case. *Huber v. Taylor*, 532 F.3d 237, 249 (3d Cir. 2008). If the discovery rule renders Victorin's claim against Santiago timely, then Santiago can remain in this case, destroying diversity.

November 2005, the New Jersey Supreme Court held that his claim arising from the loss of health insurance was timely because he did not discover that retaliatory action until November 2003. *Id.* at 1235.

This case is parallel. As in *Roa*, Victorin learned that the defendant frustrated his access to an employee benefit within the limitations period. He did not have reason to know of Santiago's alleged actions earlier, when they occurred, because they came to light only when he tried to collect workers compensation. Thus, in fairness, his claim could accrue in February 2019, when he learned from the claims adjuster that he could not collect workers compensation and that Santiago was to blame.

In response, JLL argues that Victorin has alleged only that Santiago told the workers compensation carrier that Victorin's injury was not work-related, an act that does not rise to the level of an adverse employment action. (Opp. at 15.) It is true that an NJLAD retaliation claim requires, among other things, that a supervisor took an adverse employment action against an employee. *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 619 (N.J. 2013) (listing elements); *McDermott v. CareAllies, Inc.*, --- F. Supp. 3d ----, ----, Civ. No. 20-03496, 2020 WL 7022749, at *9 (D.N.J. Nov. 30, 2020) ("NJLAD retaliation may be directly asserted against an individual defendant." (citing N.J. Stat. Ann. § 10:5-12(d))). Although there is no bright-line rule defining an adverse employment action, generally an employee must show that the action would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Roa*, 985 A.2d at 1236 (citation omitted). *Roa* held that health insurance cancellation met that standard, *id.*, so there is at least a colorable claim that cancelling or otherwise interfering with workers compensation, another employee benefit, would qualify as well.

Moreover, the Complaint gives rise to an inference that Santiago interfered with Victorin's workers compensation claim wrongfully. In other words, this was not an innocuous case of Santiago discharging his duty to advise the carrier of the facts, as JLL suggests. Santiago had taken a host of

retaliatory actions against Victorin previously; it is alleged as well that Santiago told the claims adjuster that the injury did not occur at work, which Santiago knew was not true. (*See* Compl. ¶ 181, 189.) All said then, Victorin has a colorable retaliation claim against Santiago arising from the denial of workers compensation that is not time-barred.

### 2. **Equal Pay Act Claim**

Although the viability of the workers compensation retaliation claim is sufficient to require remand, I also note that Victorin has a colorable claim under the Diane B. Allen Equal Pay Act that is not time-barred. The Act amended the NJLAD to provide that claims for discrimination in pay occur and accrue on "each occasion that an individual is affected by application of a discriminatory compensation decision or other practice." N.J. Stat. Ann. § 10:5-12(a). In other words, each new paycheck reflecting a discriminatory wage starts the NJLAD's two-year limitations period running afresh. *Alexander*, 8 A.3d at 206.[5]

The Complaint alleges that Victorin, to this day, is paid less than similarly situated non-Black employees and that he has been relegated to low-paying positions. (Compl. ¶ 158.) The Complaint further alleges that Victorin's present situation stems from Santiago's discrimination against him and refusal to promote him. (*Id.* ¶¶ 151, 155–56.) The Complaint, then, asserts a colorable, timely claim because Victorin continues to feel the effects of a "discriminatory compensation decision or other practice."

JLL raises two arguments why this claim should nonetheless be barred. JLL's arguments, while reasonable, do not show that Victorin's claim is "wholly insubstantial and frivolous." *Briscoe*, 448 F.3d at 218 (citation omitted). Rather, JLL's arguments employ a motion to dismiss standard, and the Third Circuit has repeatedly cautioned district courts to refrain from turning a

---

[5]      The Act codified the New Jersey Supreme Court's holding in *Alexander*. N.J. Office of the Att'y Gen., Div. of Civil Rights, *Guidance on the Diane B. Allen Equal Pay Act*, at 2 (Mar. 2020), https://www.nj.gov/oag/dcr/downloads/DCR-Equal-Pay-Guidance-3.2.20.pdf.

fraudulent joinder inquiry into an inquiry whether a plaintiff states a plausible claim. *Id.* Indeed, JLL's arguments require "an intricate analysis of state law," so they cannot be the basis for finding fraudulent joinder. *Batoff*, 977 F.2d at 853.

JLL first argues that only employers—not supervisors—can be liable for discriminatory pay and, relatedly, that the Complaint does not allege any involvement by Santiago in wage-setting decisions. (Opp. at 16–17.) True, the NJLAD makes it unlawful "for an employer" to pay a discriminatory wage. N.J. Stat. Ann. § 10:5-12(t). But a supervisor can be individually liable for aiding and abetting acts of discrimination. *Cicchetti v. Morris Cnty. Sheriff's Office*, 947 A.2d 626, 645 (N.J. 2008). There is at least a colorable argument that Santiago played a role in the lower wages paid by JLL because Santiago relegated Victorin to lower-paying positions and created an environment in which JLL management unfairly disliked him. (Compl. ¶ 156.) At bottom, to completely disentangle Santiago from the alleged discriminatory pay would require "an intricate analysis of state law," not to mention the underlying facts, which I am not to undertake. *Batoff*, 977 F.2d at 853; *see McDermott*, 2020 WL 7022749, at *8–9 (finding that an NJLAD claim against a supervisor was colorable even though it lacked prima facie elements and was based on scant allegations).

Next, JLL argues that the Equal Pay Act took effect on July 1, 2018, and does not apply retroactively, noting that the Complaint does not allege any actions by Santiago post-July 2018. (Opp. at 16.) This argument misses the mark. The Equal Pay Act, and *Alexander* before it, allow claims to accrue based on each discriminatory paycheck—even if the underlying decision to underpay an employee occurred earlier. N.J. Stat. Ann. § 10:5-12(a); *Alexander*, 8 A.3d at 206. Victorin alleges just that, so his claim is colorable and timely.

\* \* \*

In sum, Victorin has at least two colorable claims: one for retaliation relating to his workers compensation and one under the Equal Pay Act. One viable state claim against Santiago would be sufficient to warrant a remand based on Santiago's New Jersey citizenship. *See, e.g.*, *Green*, 707 F.2d at 207.

Accordingly, I need not address the parties' other arguments relating to the statute of limitations.

### B. Service

As a separate argument, JLL argues that Santiago's citizenship cannot destroy diversity because he has not been served and is not yet in this case. (Opp. at 17–18.)[6] In other words, Santiago's citizenship should be "disregarded for diversity purposes." (*Id.* at 17.)

Many courts, including ones in this District, have held that diversity is determined for removal purposes based on the citizenship of defendants named in the complaint; a court cannot ignore a defendant simply because that defendant was not yet served. *E.g.*, *Rhodes v. Barnett*, 692 F. App'x 834, 835–36 (9th Cir. 2017); *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 883 (5th Cir. 1998); *Pecherski v. Gen. Motors Corp.*, 636 F.2d 1156, 1160–61 (8th Cir. 1981); *Reyes v. Sheika*, Civ. No. 19-20388, 2020 WL 2735710, at *2 (D.N.J. May 7, 2020), *report & recommendation adopted*, 2020 WL 2732069 (D.N.J. May 26, 2020); *Cooper Hosp. Univ. Med. Ctr. v. Seafarers Health & Benefits Plan*, 500 F. Supp. 2d 457, 459 n.5 (D.N.J. 2007). That rule makes good sense because the service problem here is curable. Although the Federal Rules require service within 90 days of filing a complaint, a district court can extend the time for service or otherwise excuse late service in the court's discretion. Fed. R. Civ. P. 4(m); *Davis v. Samuels*, 962 F.3d 105, 116 (3d Cir. 2020). What is more, a late-served defendant can still move to remand a case, 28 U.S.C. § 1448, and a court in any event must dismiss if at any time it finds it lacks subject matter jurisdiction.

Thus, as the Eighth Circuit observed, ignoring unserved defendants "would create needless jurisdictional problems" because the propriety of removal could change day-to-day based on when service is perfected. *Pecherski*,

---

[6]    There is no evidence in the record of service on Santiago, and Victorin has not responded to the service argument. Although ordinarily all defendants must consent to removal, that rule of unanimity does not apply where one or more defendants has not been served. *Brown*, 575 F.3d at 327.

636 F.2d at 1161 n.6. Accordingly, the weight of authority, as well as good reason, cuts against shutting my eyes to Santiago's citizenship simply because he has not yet been served.

As support for its argument, JLL relies on *Brown, supra*, but I find *Brown* distinguishable. There, a company, JEVIC, filed for bankruptcy, thus staying claims against it. 575 F.3d at 325. Nonetheless, a plaintiff sued JEVIC and its parent company, Sun, in state court, and Sun removed to federal court. *Id.* The district court remanded, reasoning that removal was not available following the stay. *Id.* The Third Circuit reversed, holding that JEVIC could not defeat removal because JEVIC was not served, not amenable to service, and thus "not before the District Court." *Id.* at 327.

*Brown* is distinguishable because the defendant there was—by law— never amenable to service. That is, bankruptcy law provided that "JEVIC could not have been served with legal process once it was protected by the automatic stay." *Id.* (citing 11 U.S.C. § 362(a)(1)). As a result, JEVIC could never "come before" the district court, so its protection from service made the federal-court claim against it a legal impossibility. That is not the case here. Santiago has not in fact been served, but the parties have identified no legal bar to service of Santiago. The unique context of the automatic stay in bankruptcy explains the Third Circuit's holding that a defendant could be "ignored" "for jurisdictional purposes." *Id.* (emphasis and citation omitted). It does not appear that any case has relied on *Brown* for the broad, across-the-board principle for which JLL cites it here. What is more, courts in this Circuit post-*Brown* have continued to apply the well-established rule that non-served defendants cannot be ignored. *Reyes*, 2020 WL 2735710, at *2 (collecting cases). The bankruptcy context of *Brown* is absent from this case, and the diversity context of this case is absent from *Brown*, so *Brown* does not alter my conclusion.

In sum, the fact that Santiago has not yet been served does not preclude me from considering his citizenship. His citizenship is non-diverse from that of the plaintiff, so there is no complete diversity, and remand is required.

10

**III.    CONCLUSION**

For the reasons set forth above, the motion to remand is granted.

A separate order will issue.

Dated: February 18, 2021


/s/ Kevin McNulty

_____
**Hon. Kevin McNulty**
**United States District Judge**